**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEPHEN BUSHANSKY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>STAPLES, INC., SHIRA GOODMAN, ROBERT SULENTIC, DREW G. FAUST, CURTIS FEENY, PAUL-HENRI FERRAND, DEBORAH A. HENRETTA, KUNAL S. KAMLANI, JOHN F. LUNDGREN, VIJAY VISHWANATH, and PAUL F. WALSH,<br><br>Defendants. | Case No.   1:17-cv-11464<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder class action brought by Plaintiff on behalf of himself and all other public stockholders of Staples, Inc. ("Staples" or the "Company") against Staples and the members of Staples' Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9 and to enjoin the vote on a proposed transaction, pursuant to which Staples will be acquired by Arch Parent Inc. ("Parent") and Parent's wholly owned subsidiary Arch Merger

Sub Inc. ("Merger Sub"). Parent and Merger Sub are beneficially owned by funds managed by Sycamore Partners Management, L.P., (together with Parent and Merger Sub, "Sycamore") (the "Proposed Transaction").

2. On June 28, 2017, Staples issued a press release announcing it had entered into an Agreement and Plan of Merger (the "Merger Agreement") to sell Staples to Sycamore for $10.25 in cash per share of Staples common stock (the "Merger Consideration"). Pursuant to the Merger Agreement, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation. The Proposed Transaction is valued at approximately $6.9 billion.

3. On August 3, 2017, Staples filed a Definitive Proxy Statement on Schedule 14A (the "Proxy") with the SEC. The Proxy, which recommends that Staples stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Staples' financial advisors, Barclays Capital Inc. ("Barclays") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) Staples insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of the above-referenced sections of the Exchange Act, as Staples stockholders need such information to cast a fully-informed vote or make an appraisal decision in connection with the Proposed Transaction.

4. In short, unless remedied, Staples' public stockholders will be forced to make a voting or appraisal decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, most of the documents are electronically stored, and the evidence exists. Staples is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Staples.

9. Defendant Staples is a Delaware corporation with its principal executive offices located at Five Hundred Staples Drive, Framingham, Massachusetts 01701. Staples is a world-class provider of products and services that primarily serve the needs of business customers. The Company's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "SPLS."

10. Defendant Shira Goodman ("Goodman") has been President and Chief Executive Officer ("CEO") of the Company since September 2016 and a director of the Company since 2016. Defendant Goodman has served in various management positions since joining the Company in 1992.

11. Defendant Robert Sulentic ("Sulentic") is Chairman of the Board and has been a director of the Company since 2007.

12. Defendant Drew G. Faust ("Faust") has been a director of the Company since 2012.

13. Defendant Curtis Feeny ("Feeny") has been a director of the Company since 2016.

14. Defendant Paul-Henri Ferrand ("Ferrand") has been a director of the Company since 2015.

15. Defendant Deborah Henretta ("Henretta") has been a director of the Company since 2016.

16. Defendant Kunal S. Kamlani ("Kamlani") has been a director of the Company since 2015.

17. Defendant John F. Lundgren ("Lundgren") has been a director of the Company since 2016.

18. Defendant Vijay Vishwanath ("Vishwanath") has been a director of the Company since 2007.

19. Defendant Paul F. Walsh ("Walsh") has been a director of the Company since 1990.

20. Defendants identified in paragraphs 10-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Sycamore Partners Management, L.P. is a private equity firm based in New York specializing in consumer and retail investments.

22. Parent is a Delaware corporation and beneficially owned by affiliates of Sycamore Partners Management, L.P.

23. Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Parent.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Staples common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

25. Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

26. The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of June 26, 2017, there were approximately 653,441,161 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Staples or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

27. Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

    (a) Whether defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

    (b) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(c)     Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

28.     Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

29.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

30.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Company Background and Strong Financial Outlook**

31.     Staples is a world-class provider of products and services that primarily serve the needs of business customers. The Company pioneered the office products superstore concept by opening the first office products superstore in Brighton, Massachusetts in 1986 to serve the needs of small businesses. Staples currently serves businesses of all sizes and consumers in North America, Australia, South America and Asia. Staples operates in two main business segments: North American Delivery and North American Retail, with the Company's delivery businesses accounting for a majority of its sales.

32.     In May 2016, Staples introduced its Staples 20/20 strategic plan with four key priorities to transform the Company: (i) accelerate mid-market growth in North America; (ii) preserve profitability and rationalize excess capacity in North American Retail stores; (iii) aggressively drive profit improvement and cost reduction across the Company; and (iv) narrow the

Company's geographic focus to North America. In conjunction with the Staples 20/20 strategy, in November 2016, the Company completed the sale of its retail business in the United Kingdom, and in February 2017, completed the sale of a controlling interest in its remaining European operations.

33. On May 16, 2017, Staples announced its first quarter of 2017 financial results. For the quarter, the Company grew mid-market sales in the Company's North American contract business, Staples Business Advantage, by 10% compared to the first quarter of 2016. The Company reported improved profitability in North American Retail, increasing operating income $4 million compared to the first quarter of 2016. Staples also launched a new brand campaign that recognizes the Company's target customers and communicates the ways Staples is already a solutions provider for businesses of all sizes.

**The Sale Process**

34. In August and September 2016, the Company began discussing various strategic alternatives for Staples' North American retail business and the Company as a whole, including holding discussions with a strategic buyer referred to in the Proxy as "Party A" and financial buyers referred to in the Proxy as "Party B," "Party C," and "Party D."

35. On September 2, 2016, Party A and Staples executed a confidentiality agreement. Throughout September 2016, Party A expressed its interest in a potential acquisition of the Company's retail business.

36. On October 24, 2016, the Company and Party C entered into a confidentiality agreement.

37. In late December 2016 and early January 2017, Staples and each of Sycamore, Party B, Party D and an additional financial buyer referred to in the Proxy as "Party E" executed confidentiality agreements.

38.     On January 19, 2017, Party A submitted a preliminary indication of interest for two alternative potential transactions: an acquisition of the Company's U.S. retail business, excluding the Staples brand website URL, for $500 million in cash; or the acquisition of the Company's U.S. retail business, including the Staples brand and website URL, in an all-stock transaction for shares representing up to 15% ownership of Party A.  The Board deemed these indications of interest inadequate.

39.     On February 23 and 24, 2017, Sycamore, Party B, Party C and Party E each submitted preliminary indications of interest for a potential transaction with the Company. Sycamore submitted a proposal to acquire the Company for $11.00 per share in cash and alternative proposals to acquire the Company's North American retail business for $1.2 to $1.4 billion or the Company's U.S. retail business for $375 to $450 million.  Party B submitted a proposal to acquire Staples for $11.15 to $11.55 per share in cash and expressed interest in alternative transactions. Party C submitted a proposal to acquire the Company for $11.00 to $11.50 per share in cash.  Party E submitted a proposal to acquire Staples for $10.50 to $11.50 per share in cash.  Party D declined to submit an indication of interest.

40.     Throughout March and April 2017, Staples held discussions with the interested bidders and the parties conducted due diligence.

41.     On May 1, 2017, Barclays and Morgan Stanley delivered process letters to Sycamore, Party B, Parties C and D, acting together to submit a joint bid, and Party E, requesting final proposals by May 22, 2017.

42.     Party E subsequently informed Barclays and Morgan Stanley that it would require 10 weeks to submit a final bid.

43. On May 3, 2017, Parties C and D indicated they were no longer interested in a transaction with the Company.

44. On May 22, 2017, Sycamore submitted a proposal to acquire the Company for $11.50 per share in cash. Party B submitted a proposal to acquire the Company for $10.25 per share in cash.

45. On June 4, 2017, Party B submitted a revised proposal for $10.50 per share in cash and requested a three-week exclusivity period.

46. On June 5, 2017, Party A submitted a proposal to acquire Staples' U.S. retail business, excluding rights to the Staples brand and website URL, for cash consideration of $625 million to $700 million.

47. On June 8, 2017, Party B informed Barclays and Morgan Stanley that it was no longer interested in pursuing a transaction with the Company.

48. On June 11, 2017, Sycamore submitted a revised proposal to acquire Staples for $11.00 per share.

49. Following discussion at a June 12, 2017 Board meeting, the Board determined to continue pursuing a sale of the whole Company.

50. On June 23, 2017, Sycamore informed Barclays and Morgan Stanley it was reducing its proposed acquisition price from $11.00 to $10.00 per share.

51. Throughout the remainder of June 2017, Staples and Sycamore negotiated the terms of a transaction, ultimately agreeing to $10.25 per share in cash.

52. On June 28, 2017, Barclays and Morgan Stanley rendered their fairness opinions. Following discussion, the Board approved the Merger Agreement. Later that day, Staples and Sycamore executed the Merger Agreement.

**The Proposed Transaction**

53. On June 28, 2017, Staples and Sycamore issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> FRAMINGHAM, Mass. & NEW YORK--Jun. 28, 2017--Staples, Inc. (NASDAQ: SPLS or the "Company") and Sycamore Partners, a leading private equity firm, today announced that they have entered into a merger agreement in which investment funds managed by Sycamore Partners will acquire the Company in a transaction that values Staples at an equity value of approximately $6.9 billion. Under the terms of the merger agreement, all Staples' stockholders will receive $10.25 per share in cash for each share of common stock they own, which represents a premium of approximately 20 percent to the 10-day volume weighted average stock price for Staples shares for the period ended April 3, 2017, the last trading day prior to widespread media speculation about a potential transaction.
>
> Staples' Board of Directors has unanimously approved the merger agreement and recommends that all Staples stockholders vote in favor of the transaction.
>
> * * *
>
> "With an iconic brand, a winning strategy, and dedicated and passionate associates who are deeply focused on the customer, Staples is truly an outstanding enterprise," said Stefan Kaluzny, Managing Director of Sycamore Partners. "We have tremendous confidence in CEO Shira Goodman and great respect for the Staples management team and are excited about this opportunity to partner with them to accelerate long-term profitability."
>
> "The Sycamore Partners' team shares Staples' entrepreneurial spirit and long-term vision," said Shira Goodman, Chief Executive Officer and President, Staples, Inc. "This transaction will enable us to drive greater value for our customers and immense opportunity for our business."

**Insiders' Interests in the Proposed Transaction**

54. Staples insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and Staples' public stockholders.

55. Notably, it appears certain members of Staples management have secured positions for themselves with the combined company following consummation of the Proposed Transaction.

In the June 28, 2017 joint press release announcing the Proposed Transaction, Stefan Kaluzny, Managing Director of Sycamore, was quoted as stating, "[w]e have tremendous confidence in CEO Shira Goodman and great respect for the Staples management team and are excited about this opportunity to partner with them to accelerate long-term profitability." Moreover, according to the Proxy, "[t]he officers of the Company immediately prior to the effective time of the merger will be the initial officers of the surviving corporation." Proxy at 35.

56. In addition, Company insiders stand to reap substantial financial benefits for securing the deal with Sycamore. Pursuant to the Merger Agreement, each Company restricted stock unit and performance share award held by a former employee of the Company will be converted into the right to receive cash payments. The following table summarizes the cash payments Staples' directors and executive officers stand to receive in connection with their vested and unvested equity awards in the Proposed Transaction:

| Director or Officer | Number of Shares of Common Stock | Value of Shares of Common Stock | Number of Company Restricted Stock Units | Value of Company Restricted Stock Units | Number of Company Performance Share Awards | Value of Company Performance Share Awards | Aggregate Value |
|---|---|---|---|---|---|---|---|
| Mark Conte | 18,627 | $ 190,927 | 66,649 | $ 683,152 | — | — | $ 874,079 |
| Joseph Doody | 471,950(1) | $ 4,837,488 | 126,604 | $ 1,297,691 | 219,671 | $ 2,251,628 | $ 8,386,806 |
| Drew G. Faust | 78,730 | $ 806,983 | 19,488 | $ 199,752 | — | — | $ 1,006,735 |
| Curtis Feeny | 23,794 | $ 243,889 | 40,294 | $ 413,014 | — | — | $ 656,902 |
| Paul-Henri Ferand | 30,822 | $ 315,925 | 28,546 | $ 292,597 | — | — | $ 608,522 |
| Shira Goodman | 282,155(2) | $ 2,892,089 | 45,908 | $ 470,557 | 1,077,621 | $ 11,045,615 | $ 14,408,261 |
| Jeffrey Hall | — | — | 134,859 | $ 1,382,305 | 269,718 | $ 2,764,610 | $ 4,146,914 |
| Deborah A. Henretta | 20,115 | $ 206,179 | 36,730 | $ 376,483 | — | — | $ 582,661 |
| Kunal S. Kamlani | 31,033 | $ 318,088 | 28,546 | $ 292,597 | — | — | $ 610,685 |
| Christine T. Komola | 221,995(3) | $ 2,275,449 | 126,604 | $ 1,297,691 | 429,861 | $ 4,406,075 | $ 7,979,215 |
| John F. Lundgren | 20,115 | $ 206,179 | 36,730 | $ 376,483 | — | — | $ 582,661 |
| Steven Matyas | 163,086 | $ 1,671,632 | 28,800 | $ 295,200 | 86,104 | $ 882,566 | $ 2,849,398 |

| Name | | | | | | | |
|---|---|---|---|---|---|---|---|
| Neil Ringel | 14,686(4) $ | 150,532 | 130,774 $ | 1,340,434 | 182,776 $ | 1,873,454 $ | 3,364,419 |
| Robert E. Sulentic | 152,990 $ | 1,568,148 | 23,943 $ | 245,416 | — | — $ | 1,813,563 |
| Vijay Vishwanath | 113,836 $ | 1,166,819 | 23,052 $ | 236,283 | — | — $ | 1,403,102 |
| Paul F. Walsh | 242,783 $ | 2,488,526 | 23,052 $ | 236,283 | — | — $ | 2,724,809 |
| Michael Williams | 28,314 $ | 290,219 | 75,143 $ | 770,216 | 113,951 $ | 1,167,998 $ | 2,228,432 |

57.   Moreover, if they are terminated in connection with the Proposed Transaction, Staples' named executive officers stand to receive substantial cash severance payments in the form of golden parachute compensation. The following table sets forth the golden parachute compensation the Company's named executive officers stand to receive:

| Name | Cash($)(1) | Equity($)(2) | Perquisites/ Benefits($)(3) | Tax Reimbursement ($)(4) | Total($) |
|---|---|---|---|---|---|
| Shira Goodman | 3,823,453 | 11,516,172 | 23,346 | 0 to 8,600,333 | 15,362,971 to 23,963,304 |
| Christine T. Komola | 1,604,424 | 5,703,766 | — | 0 to 3,318,651 | 7,308,190 to 10,626,841 |
| Mark Conte | 477,555 | 664,733 | 15,564 | — | 1,157,852 |
| Joseph G. Doody | — | 2,251,628 | — | — | 2,251,628 |
| Michael Williams | 1,084,113 | 1,938,214 | 23,346 | 0 to 1,102,417 | 3,045,673 to 4,148,090 |
| Ronald Sargent | — | 5,155,863 | — | — | 5,155,863 |
| John Wilson | — | 1,134,942 | — | — | 1,134,942 |

**The Proxy Contains Material Misstatements or Omissions**

58.   The defendants filed a materially incomplete and misleading Proxy with the SEC and disseminated it to Staples' stockholders. The Proxy misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting or appraisal decision in connection with the Proposed Transaction.

59.   Specifically, as set forth below, the Proxy fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i)

the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Barclays and Morgan Stanley; and (ii) Company insiders potential conflicts of interest. Accordingly, Staples stockholders are being asked to make a voting or appraisal decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning Barclays' and Morgan Stanley's Financial Analyses*

60. The Proxy describes Barclays' and Morgan Stanley's fairness opinions and the various valuation analyses performed in support of their opinion. However, the description of Barclays' and Morgan Stanley's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Staples' public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Barclays' and Morgan Stanley's fairness opinions in determining whether to vote in favor of the Proposed Transaction or seek appraisal. This omitted information, if disclosed, would significantly alter the total mix of information available to Staples' stockholders.

61. With respect to Barclays' *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 8.91% to 10.21%; (ii) the basis for selecting the range of EV/LTM multiples of 4.5x to 6.5x; (iii) the implied perpetuity growth rates resulting from the analysis; (iv) Staples' total debt, non-controlling interest and cash and cash equivalents, in each case as of April 29, 2017; and (v) the Company's fully diluted shares outstanding as provided by Company management and used in the analysis.

62. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 8.1% to 9.8%; (ii) the basis for selecting the range of EV/LTM multiples of 4.5x to 6.5x; (iii) the implied perpetuity

growth rates resulting from the analysis; (iv) Staples' total debt, non-controlling interest and cash and cash equivalents, in each case as of April 29, 2017; and (v) the Company's fully diluted shares outstanding as provided by Company management and used in the analysis.

63. With respect to the *Illustrative Leveraged Buyout Analysis* performed by Barclays and Morgan Stanley, the Proxy Statement fails to disclose the inputs and assumptions underlying the leverage multiple, financing terms, exit multiples and target internal rates of return used in the analysis.

64. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

65. The omission of this information renders the statements in the "Opinions of the Company's Financial Advisors" section of the Proxy false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Insiders' Potential Conflicts of Interest*

66. The Proxy also materially misleads stockholders as to the potential conflicts of interest faced by Staples management and the Board.

67. Although the Proxy states that "discussions [between Sycamore and the Company's management regarding the terms of the Company's management employment following the closing] have not taken place as of the date of this proxy statement" (Proxy at 53), in the June 28, 2017 joint press release announcing the Proposed Transaction, Stefan Kaluzny, Managing Director of Sycamore, was quoted as stating, "[w]e have tremendous confidence in CEO Shira Goodman and great respect for the Staples management team and are excited about this opportunity to partner with them to accelerate long-term profitability." Moreover, according to the Proxy, "[t]he officers

of the Company immediately prior to the effective time of the merger will be the initial officers of the surviving corporation." Proxy at 35.

68. The Proxy must clarify whether any members of Staples' management have secured post-close positions with the combined company and set forth any of the employment related discussions and negotiations that occurred between Sycamore and members of Staples management, whether any of Sycamore's prior proposals or indications of interest mentioned management retention, and the details of any employment agreements between Sycamore and members of Staples management.

69. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

70. Defendants' failure to provide Staples stockholders with the foregoing material information renders the statements in the "Directors and Officers of the Surviving Corporation," "Background of the Merger," and "Interests of Certain Persons in the Merger" sections of the Proxy false and/or materially misleading and constitutes a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.  The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make a fully-informed voting or appraisal decision in connection with the

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

71. Plaintiff repeats all previous allegations as if set forth in full.

72. During the relevant period, defendants disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

73. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial analyses performed by the Company's financial advisors, and potential conflicts of interest faced by Staples management and the Board. The defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

74. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

75. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

76. Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

77. Plaintiff repeats all previous allegations as if set forth in full.

78. The Individual Defendants acted as controlling persons of Staples within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Staples, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

79. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

80. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

81. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

82. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

83. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Staples' stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Staples, and against defendants, as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Staples stockholders;

C. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.	Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

E.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 8, 2017

/s/ Mitchell J. Matorin
Mitchell J. Matorin (BBO# 649304)
MATORIN LAW OFFICE, LLC
18 Grove Street, Suite 5
Wellesley, Massachusetts 02482
(781) 453-0100
mmatorin@matorinlaw.com

**WEISSLAW LLP**
Richard A. Acocelli
Michael A. Rogovin
Kelly C. Keenan
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010

*Attorneys for Plaintiff*